IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEPHANIE GOODMAN,<br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>NORRISTOWN AREA SCHOOL DISTRICT,<br>　　　　　　Defendant. | CIVIL ACTION<br><br><br><br>NO.  20-1682 |

## MEMORANDUM OPINION

Plaintiff Stephanie Goodman sues Defendant Norristown Area School District ("the District") for racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 and 1991 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.*, and for age discrimination in violation of the PHRA and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621-634. The District moves to dismiss. For the reasons that follow, the District's motion to dismiss shall be granted in part and denied in part.[1]

I.  **BACKGROUND**

Goodman is an African American woman, currently in her early sixties, who is certified

---

1 The District also moves to strike paragraphs 16 and 18 from Goodman's Amended Complaint, which appear under the heading "Teacher Retention" on the basis that they are "impertinent, immaterial and scandalous." Fed. R. Civ. P. 12(f). In this regard, Plaintiff's complaint avers that the race of the teachers in the district is not reflective of the race of the student body and that two African American teachers recently left due to a lack of advancement and unfair treatment by the school administration. It is difficult to evaluate why the District believes these allegations to be impertinent or scandalous particularly given that it does not provide any explanation in support of its conclusion that they are. While the materiality of the statements to Plaintiff's claims may be questioned, it is too early in the litigation to make that determination, particularly when the District will have the opportunity to challenge their inclusion pre-trial through motions in limine and during trial by properly lodged objection. The District also moves to strike footnote 1 of Goodman's Amended Complaint. Goodman does not object. Accordingly, it shall be stricken.

to teach in Pennsylvania.  In 2006, Goodman applied for and was hired by the District as a summer school Spanish teacher at Norristown Area High School.  Subsequently, Goodman did not apply for any other positions with the District but was simply re-hired or promoted.  In 2007, she was re-hired to teach summer school.  Although the Amended Complaint states that "[f]rom the time of her hire until her resignation in January 2020, Plaintiff was the only African American teacher in the World Language department[,]" it is silent as to the nature of Goodman's employment from 2007-2014.  It does, however, alleged that, in May 2014, following "several abrupt Spanish teaching vacancies," she was hired by the District as a substitute teacher.  That August, she worked as a part-time, non-tenured teacher and was assigned two classes; and in September, she was assigned two additional classes, bringing her to "full-time hours."  These hours entitled her not only to a higher salary, but also to benefits.

During the summer of 2016, Goodman was informed that her hours were being reduced from four classes back to two (*i.e.*, from full-time to part-time), ostensibly "due to budget cuts and decreased enrollment," and she received a letter dated August 10 advising her the change would be effective beginning the end of the month.  The same week the letter was mailed, however, the District posted two openings for full-time Spanish teachers, and it subsequently hired two Hispanic women for those positions—both of whom were younger than Goodman, and one of whom was not yet certified to teach in Pennsylvania.  Goodman was not informed of these openings and allegedly did not learned of the new hires until the beginning of the next school year (2016-2017) when they began teaching students.

That fall, Goodman complained to school administrators of discrimination.  Specifically, in September 2016, she told the assistant principal that she was not receiving the same materials and workspace as "younger, White teachers."  She alleges that he responded by providing her

with misinformation that ultimately caused her to receive a lower performance rating than those younger, White teachers. As a result of this incident, in May 2017 Goodman filed an administrative complaint with the Pennsylvania Human Relations Commission ("PHRC") which she dual-filed with the Employment Opportunity Commission ("EEOC") in which she alleged race and age discrimination as well as retaliation.[2]

According to Goodman, the District retaliated against her in October 2017 for her May complaint by "seeking negative reviews about [her]," conducting impromptu classroom observations, and attempting to prevent her from signing in for work. As a result of these incidents, Goodman filed an amended administrative complaint with the PHRC in December 2017. Goodman does not allege any instances of retaliation following the filing of her amended complaint until Summer 2019, when she received a Needs Improvement rating for the 2018-19 school year and was placed on a Performance Improvement Plan in July 2019.

Goodman obtained a Right to Sue letter from the EEOC on February 12, 2020, advising her of her right to sue the District within 90 days of such notice. Goodman then filed a Complaint in federal court on March 31, 2020. Goodman obtained an additional Right to Sue letter on June 15, 2020, following her filing a Title VII charge premised on the 2018-2019 performance evaluation and the July 2019 Performance Improvement Plan; an Amended Complaint filed by Goodman in this Court on June 15, 2020 included allegations concerning the

---

[2] That May, Goodman also brought a labor grievance against the District, arguing that its failure to hire her to one of the full-time positions violated the Pennsylvania School Code's ("PSC") seniority system and the governing collective bargaining agreement ("CBA"); an arbitrator ultimately determined that since Goodman had not been tenured at the time the District had not violated the CBA. The District argues that Goodman's grievance arbitration precludes her racial discrimination claims under the doctrine of res judicata. Though res judicata may be raised on a motion to dismiss, it may not serve as grounds for a Rule 12(b)(6) dismissal unless it is "apparent on the face of the complaint." *Rycoline Prod., Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997). Plaintiff's reference to her filing a union grievance concerning the District's failure to promote her does not include any allegations that the grievance concerned discrimination based on her race, her age or concerning the District's retaliation against her. Consequently, Goodman's claims will not be dismissed on this basis.

Summer 2019 incidents and, for the first time, claims under the ADEA.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a Court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  Though a plaintiff in an employment discrimination or retaliation case is "not required to establish a prima facie case" to survive a motion to dismiss, she must nevertheless "plead facts that, construed in [her] favor, state a claim of discrimination that is plausible on its face." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 791 (3d Cir. 2016).

In determining the adequacy of a complaint, a court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to plaintiff."  *Warren Gen. Hosp. v. Amgen, Inc.*, 643 F.3d 77, 84 (3d Cir. 2011).  Additionally, a court may consider "exhibits attached to the complaint and matters of public record," *City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 259 (3d Cir. 1998), as well as "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document," *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

## III. DISCUSSION

### A. Timeliness

#### i. *Discrimination: PHRA*

As a threshold matter, the District argues that Goodman's PHRA race and age-based discrimination claims as well as for retaliation are time-barred, as she failed to file her administrative complaint within the 180-day statutory period.  *See* 43 Pa. Stat. Ann. § 959(h). To wit, Goodman alleges that the District discriminated against her when it hired two, younger

4

Hispanic women—Pilar Gomez and Frances Cruz—as full-time Spanish teachers.  These positions were posted on August 8, 2016, and Gomez and Cruz were appointed on September 19, 2016.  But, Goodman did not file her administrative complaint until May 19, 2017—more than 180 days after both dates.  Citing to *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380 (3d Cir. 1994), a Title VII and PHRA case, Goodman counters that "the statute of limitations begins to run when the plaintiff discovers that she has been injured," which, in this case, was "November 2016 when [Goodman] learned that [Gomez and Cruz] were hired."  *Oshiver*, however, has been over-ruled by *Rotkiske v. Klemm* which explained that:

> to the extent that [prior] decisions have . . . appl[ied] a discovery rule to statutes that expressly begin to run when a violation 'occurs,' they cannot be reconciled with the Supreme Court's mandate that when the text of a statute and reasonable inferences from it give a clear answer, that is the end of the matter.

890 F.3d 422, 428 (3d Cir. 2018), *aff'd*, 140 S. Ct. 355 (2019) (internal quotations and alterations omitted).  Here, the statute began to run on the day Gomez and Cruz were hired—September 19, 2016.  Because May 17, 2017 is more than 180 days from September 19, 2016, and because the PHRA explicitly requires a complaint to be filed "within [180] days after the alleged act of discrimination," 43 Pa. Stat. Ann. § 959(h), Goodman's PHRA race and age discrimination claims are untimely and will therefore be dismissed with prejudice.  *See Rotkiske*, 890 F.3d at 428[3,4]

### ii. ADEA Claims

The District further contends that Goodman's age discrimination claims under the ADEA

---

[3] The timeliness of Goodman's PHRA retaliation claims are discussed *infra*.

[4] That a complaint may be dual-filed with the PHRC and EEOC does not extend the PHRA's 180-day deadline to the 300-day applicable to Title VII/ADEA claims.  *See, e.g.*, *Banks v. Borough*, 2015 WL 5316520 (E.D. Pa. Sept. 10, 2015); *Barra v. Rose Tree Media Sch. Dist.*, 858 A.2d 206 (Pa. Commw. 2004).

should also be dismissed as time-barred.  When the EEOC issues a Right to Sue letter, a plaintiff must bring suit within 90 days of receipt of such notice.  29 U.S.C. § 626(e).  The District's timeliness argument stems from the fact that Goodman did not assert her ADEA claim until her June 15, 2020 Amended Complaint, while the EEOC issued its Right to Sue letter on February 12, 2020.  Though June 15, 2020 is more than 90 days after she received the Right to Sue letter, Goodman argues that the claim should nonetheless be considered timely because it "relates back" to her initial Complaint, which *was* filed within the 90-day period.  Indeed, under Federal Rule of Civil Procedure 15(c)(1)(B), "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."  "In essence, application of Rule 15(c) involves a search for a common core of operative facts in the two pleadings.  As such, the Court looks to whether the opposing party has had fair notice of the general fact situation and legal theory upon which the amending party proceeds."  *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir. 2004).

In her initial Complaint, though Goodman did not include an ADEA claim, she did allege age discrimination in violation of 28 U.S.C. § 1981.  In support of that claim she alleged that she was over the age of 40 when the relevant events occurred; that one of the two teachers who were hired to fill the full-time Spanish Teacher position was under 40 years old; that younger teachers received new textbooks while she was required to share textbooks with others; that she was denied an individual workspace which was provided to younger teachers; and that administrative manipulation of the Student Learning Process caused her to sustain lower performance ratings than her younger colleagues.  These allegations illustrate that Goodman's ADEA claim arose out of the same August-September 2016 events which formed the basis of her Section 1981 claim.

6

Given these allegations, the District was on notice that Goodman intended to assert an age discrimination claim and of the allegations underpinning it, as of the filing of her initial Complaint, so the relation back doctrine applies. *Compare Clowney v. URS/AECOM, URS Fed. Servs.*, 2018 WL 487843, at *5-*6 (M.D. Pa. Jan. 19, 2018) (allowing relation back in age discrimination case where plaintiff initially "did not allege violations of the ADEA as official counts in the complaint" but did "ma[ke] numerous references to age discrimination); *Chan v. Barbour, Inc.*, 263 F. Supp.3d 521 (E.D. Pa. 2017) (allowing relation back in age, sex and national origin discrimination case where plaintiff's initial complaint only stated claims under the PHRA but amended complaint added Title VII and ADEA claims, where both complaints shared identical facts), *with Lantz v. Hosp. of Univ. of Pennsylvania*, 1996 WL 442795 (E.D. Pa. July 30, 1996) (denying application of relation back where initial complaint stated a claim for disability discrimination and the amended complaint stated a claim for age discrimination, where the original complaint did not include any facts to support a claim of age discrimination).

### iii. Failure to Exhaust

The District also argues that Goodman's age discrimination claims under the ADEA should be dismissed for failure to exhaust administrative remedies. *See* 29 U.S.C. § 626(d). Specifically, the District contends that while Goodman's PHRC/EEOC complaint alleges age discrimination on a "demotion" theory, her Amended Complaint alleges age discrimination under a failure to hire/failure to promote theory. Her May 2017 administrative complaint shows quite to the contrary. The standard form for the complaint includes a questionnaire. Question number 3 asks the complainant to "describe how you were harmed . . . so we can determine how to assist you," provides a check list of possible adverse employment actions and asks the complainant to "check off all that apply." Goodman checked off "demotion" as well as "failure

7

to hire" and "failure to promote."  Further, in her December 2017 amended administrative complaint, Goodman premised her "demotion" claim on the fact that "[the District] hired two full time younger teachers only after demoting me from my full-time teaching position"— essentially the same allegation made in her Amended Complaint to support her ADEA claim.  Accordingly, she has exhausted her administrative remedies with respect to her failure to hire/failure to promote theories.

### B.  Failure to State a Claim

The District argues that Plaintiff's claims for race and age discrimination under the ADEA and Title VII and for retaliation under Title VII and the PHRA must be dismissed for failure to state a claim.

#### i.  *Discrimination: Title VII and ADEA*

Goodman alleges that the District violated Title VII and the ADEA by engaging in "discriminatory failure to hire/failure to promote" on the basis of both age and race when it did not hire her for one of the open Spanish teacher positions.

A plaintiff alleging failure to hire or promote must allege facts sufficient to suggest that she is a member of a protected class; she was qualified for the position she sought to attain; she suffered an adverse employment action; and the action occurred under circumstances that could give rise to an inference of discrimination." *Ruff v. Temple Univ.*, 122 F. Supp.3d 212, 217 (E.D. Pa. 2015); *see also Fuentes v. Perskie,* 32 F.3d 759, 763 (3d Cir. 1994).  And, a plaintiff may raise an inference of discrimination by allegations that demonstrate a causal nexus between his membership in a protected class and the adverse employment action.  *See Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, n.7 (3d Cir. 2003).  This same framework applies in both Title VII and ADEA failure to hire or promote cases.  *See id.* at 797 ("The requirements for a prima facie case

8

of Title VII race discrimination and age discrimination under the ADEA are substantially the same. The only real distinction is that for age discrimination, an individual is a member of a protected class if he is forty years of age or older.").

Although failure to hire or promote cases generally suppose that the Plaintiff has applied for the job for which she was not hired or promoted, there are circumstances in which this is not a requirement. *See, e.g., Dickerson v. New Jersey Inst. of Tech.*, 2019 WL 6032378, at *7 (D.N.J. Nov. 14, 2019) ("the case law in this district does not require [a plaintiff] to assert that she applied for a formal promotion in order to withstand a motion to dismiss."); *Khair v. Campbell Soup Co.*, 893 F. Supp. 316, 331 (D.N.J. 1995) (while "some courts have held that failure to apply for a promotion is fatal to a failure to promote claim, many courts have overlooked this failure in certain cases,"); *E.E.O.C. v. Metal Serv. Co.*, 892 F.2d 341, 350 (3d Cir. 1990) (where process is "secretive" no need for the Plaintiff to show that she applied for the position she sought).

Here, the District acknowledges that Goodman is a member of a protected class (*i.e.*, she is an African American women who was over 40 years of age when the allegedly discriminatory conduct occurred); that she was qualified for the full-time Spanish teacher positions; and that she suffered an adverse employment action where she was not hired or promoted to one of those positions. But, the District argues, Goodman has not identified circumstances giving rise to an inference of discrimination. In particular, the District emphasizes that Goodman did not apply for the full-time teacher position, so it cannot have failed to hire or promote her.[5]

---

[5] Goodman also asserts, citing to *Metal Service*, that "according to the case law in this District, these facts automatically establish a prima facie case of discrimination," since, "[w]here an employer fails to notified its own African American employee of a vacancy and instead goes outside of the company to hire a worker outside its employee's protected class, a qualified African American employee has a prima facie case of discriminatory hiring based on race." However, this statement is a variation on a quote from a Northern District of Ohio case summarized in *Metal Service*, not *Metal Service*'s holding. The *Metal Service*'s court's holding was fact specific and explicitly relied on the fact that plaintiffs, two African American brothers, "were required to undergo a burdensome

Here, Goodman has sufficiently alleged a causal nexus between her membership in a protected class and the adverse employment action, in that the District reduced her employment as a Spanish teacher from full-time to part-time, providing as a rationale "budget cuts and decreased enrollment," while near-simultaneously advertising two openings for full-time Spanish teaching positions.  And, the same week that it officially notified Goodman of her demotion, it began the process of hiring two, younger Hispanic women—one of who was not yet certified to teach in Pennsylvania—to fill the newly-publicized jobs.

This is one of those cases in which Plaintiff's failure to apply for one of the full-time positions will not result in the dismissal of her case at this juncture.  According to Goodman, her demotion letter was dated August 10, 2016 and she received it sometime after the postings for the full-time positions were already closed—hardly affording her a meaningful opportunity "to convey [her] interest in the job to the employer."  *Id.* at 348.  And, as Goodman herself notes in her Opposition, "a reasonable employee [who had been advised that their working arrangement was being decreased due to budget cuts and low enrollment] would not seek openings for th[e] same job with the same employer."  Therefore, Goodman has stated a plausible claim for racial discrimination under Title VII and age discrimination under the ADEA.

### ii.  *Retaliation: Title VII and PHRA*

Goodman argues that the District retaliated against her in violation of the PHRA and Title VII for making verbal complaints of discrimination to the high school's administration and for filing formal complaints against the District.

A plaintiff pleading retaliation under Title VII and the PHRA,[6] must allege facts

---

application process while white applicants were being hired for apparently unskilled jobs through word-of-mouth in an all white workforce."

[6] With respect to whether a plaintiff has stated a claim that is plausible on its face, Title VII and PHRA claims may

sufficient to suggest "(1) that she engaged in protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 220 (3d Cir. 2017) (internal alterations omitted). A causal connection may be shown through "timing," (*i.e.*, temporal proximity between the protected activity and the adverse action), "continuing antagonism," or "other evidence gleaned from the record as a whole from which causation can be inferred." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000).

Here, Goodman identifies three instances of retaliation. First, Goodman alleges that, in October 2016, Assistant Principal Chris Stein retaliated against her for "ma[king] verbal complaints to [him in September 2016] about the discriminatory treatment based on race and age . . . in regards to materials and access to workspace" by "provid[ing] misinformation to [her] during the Student Learning Objectives (SOL) process." According to Goodman, this misinformation "caus[ed] her to sustain lower performance ratings than her younger, Caucasian counterparts" because she was "required . . . to use data points that her younger, Caucasian counterparts were instructed to omit." Second, Goodman alleges that, in response to the filing of her May 2017 administrative complaint, "[s]tarting in October 2017, [the District] began to retaliate against [her by] seeking ways to build a case to support her termination." Specifically, she states that: 1) "the school administration was seeking negative reviews about [her] from students and parents;" 2) the high school administration conducted "[i]mpromptu classroom visits . . . and reviews while no such visits or reviews were conducted on other Spanish teachers outside her protected class;" 3) on October 5, a school secretary "attempted to prevent [her] from

---

be analyzed "in the singular because the same framework . . . applies to both." *Connelly*, 809 F.3d at 792 n. 9.

11

signing in for work by not making the sign-in sheet available;" 4) on October 17, "[she] worked a full shift but someone signed her in for a half-day; and, 5) on October 24, she "attempted to sign in and [the secretary] advised her that she had signed in for the day," but when she "looked at the sign-in sheet [she found] that her initials on the sign-in sheet were not made by her." Third and finally, Goodman alleges that, at the end of the 2018-2019 school year, the District retaliated against her for amending her administrative complaint in December 2017 "by rating her Needs Improvement" and putting her on a Performance Improvement Plan in July 2019.

The District concedes that, taking the allegations in her Amended Complaint as true, Goodman "has satisfied the first and second elements [of] a prima facie case," *i.e.*, that she engaged in protected activity and suffered an adverse employment action. The District denies, however, that Goodman has sufficiently alleged a causal connection between that protected activity and the adverse employment action as to all of these incidents.

Taking the three incidents identified by Goodman in turn, the District appears to concede that Goodman has sufficiently alleged causation with respect to the October 2016 incident. In its Reply in Support of its Motion to Dismiss, the District states that it "did not assert the lack of any . . . temporal proximity" between the September 2016 complaints and the October 2016 retaliation, but rather, that it "contends that [] this claim of retaliation is untimely for not having been filed with the PHRC within 180 days."[7] This is interpreted as thus raising only a timeliness argument, and conceding that temporal proximity such that may raise an inference of causation

---

[7] And, indeed, Goodman has sufficiently alleged causation with respect to this first instance of retaliation. *See e.g., Alers v. City of Philadelphia*, 919 F. Supp.2d 528, 552 (E.D. Pa. 2013) (finding that "the temporal proximity between [plaintiff'] activity and the alleged retaliation appears unusually suggestive" where "[i]t was barely one month from the time [plaintiff's supervisor] learned of [plaintiff's] EEOC and PHRC complaints to the time he began an internal work rule investigation against [him]").

exists between the September 2016 complaints and the October 2016.[8]

As to the second round of incidents, which occurred in October 2017, the District contends that Goodman has not sufficiently alleged causation.[9]  Specifically, it argues that these "retaliatory acts . . . could not have been the result of retaliation for Plaintiff's filing of her [May 2017] PHRC Complaint . . . because initial PHRC Complaint/Questionnaires are not served on respondent employers until after they are served with the Amended Complaint, as occurred here."[10]  At this stage, however, the Court must construe the Amended Complaint in the light most favorable to Goodman.  So read, Goodman's allegations are that, after filing an administrative complaint at the end of one school year, the District began retaliating against her when first it could—at the beginning of the next.  While a period of months may not be considered "unusually suggestive" in certain contexts, it may be where a plaintiff's work is scheduled such that the employer may not have an immediate opportunity to retaliate.  *See Connelly*, 809 F.3d at 792-93.  Therefore, here too Goodman has alleged facts sufficient to support a reasonable inference of a causal connection between her protected conduct and the alleged retaliation.

---

[8] For the reasons outlined in Section III.A.1, although this claim is time-barred as premised on the PHRA, it survives under Title VII.  *C.f. Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013) ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.").

[9] Timeliness is not at issue here with respect to the PHRA claim because the allegedly retaliatory incident occurred in October 2017 and Goodman filed her amended PHRC complaint that December, well within the 180-day period.

[10] Goodman counters that she "believes the Defendant was aware of the [administrative c]omplaint by either May 2017 or June 2017, because of a conversation [she] had with her union representative."  However, this allegation does not appear in Goodman's Amended Complaint.  Goodman requests that she be allowed to "further amend her Complaint and conduct discovery on this matter to determine exactly when Defendant had actual or constructive knowledge that [she] filed a Complaint with the PHRC."  Because the Court finds that the Amended Complaint already "allege[s] facts that could support a reasonable inference of a causal connection between her protected activity [and the adverse employment action]" as is, *Connelly*, 809 F.3d at 793, Goodman's request to further amend her Complaint shall be denied.

Finally, as to the third incident—the unfavorable performance review for the 2018-2019 school year and the resulting Performance Improvement Plan—the District also denies that Goodman has sufficiently alleged causation, noting that about a year and a half separated this review from the December 2017 amended administrative complaint which allegedly precipitated it. Indeed, here, the near 18-month gap between the amended administrative complaint and the Summer 2019 incidents renders her claim "facially implausible," particularly since she does not allege any intervening antagonism or animus, or any other intervening occurrences from which causation may be inferred. *Farrell*, 206 F.3d at 281; *see also Queer v. Westmoreland Cty.*, 296 F. App'x 290 (3d Cir. 2008) (finding that "over a year" between protected activity and alleged retaliation" not "unusually suggestive").[11]

## IV. CONCLUSION

For the foregoing reasons, the District's motion to dismiss shall be granted in part and denied in part. Specifically, the District's motion to dismiss shall be granted as to Goodman's PHRA age and race discrimination claims; as to her PHRA retaliation claims stemming from the alleged October 2016, and as to the Summer 2019 incidents; and as to the Title VII retaliation claim stemming from the Summer 2019 incidents. The District's motion to strike shall also be granted as to footnote 1 of Goodman's Amended Complaint. It shall be denied in all other

---

[11] In her Opposition, Goodman argues that this temporal distance should not defeat her claim because "[the District] only issues one comprehensive performance rating per year," meaning that "[t]he 2018-2019 school-year was [the District's] first opportunity following the receipt of the PHRC Amended Complaint to retaliate against [her]." However, the idea that the District could not have retaliated before June 2019 is contradicted by Goodman's own statement in the same paragraph: that she was evaluated at the end of the 2017-2018 school year and received "a Proficient performance rating." Though Goodman discusses "increased classroom observations beginning September 2018" as additional instances of retaliation, seemingly in an attempt to tie together the December 2017 administrative complaint and the June 2019 review, these observations are not mentioned in her Amended Complaint. These observations, which are first mentioned in her Opposition, cannot be credited. *See Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.")

respects.

An appropriate order follows.

**September 4, 2020**                    **BY THE COURT:**

**/s/Wendy Beetlestone, J.**

_____
**WENDY BEETLESTONE, J.**