**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| STEPHANIE GOODMAN,<br>        Plaintiff | : | No.: 2:20-cv-01682-WB |
| | : | |
| v. | : | |
| | : | |
| NORRISTOWN AREA<br>SCHOOL DISTRICT,<br>        Defendant | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

Michael I. Levin, Esquire (PA 21232)
James J. Musial, Esquire (PA 71100)
LEVIN LEGAL GROUP, P.C
1301 Masons Mill Business Park
1800 Byberry Road
Huntingdon Valley, PA 19006
Phone: 215.938.6378
Fax: 215.938.6375
mlevin@levinlegalgroup.com
jmusial@levinlegalgroup.com

*Attorneys for Defendant,*
*Norristown Area School District*

## TABLE OF CONTENTS

I. Facts and Procedural History…………………………………………………….....................1

II. Standard of Review………………………………………………………………………3

III. Legal Argument

    1. Summary Judgment Must Be Entered in Defendant's Favor With
    Respect to Plaintiff's Title VII AND ADEA Claims For "Failure to Hire/
    Failure to Promote"………………………………………………………………4

        A. Plaintiff Cannot Establish a Prima Facie Case of Discrimination Under
        Title VII or the ADEA………………………………………………………....5
           (1) There Was No Adverse Employment Action…………………………………...8
           (2) Goodman Suffered No Adverse Action Under Circumstances That
           Could Give Rise to an Inference of Discrimination…………………………9
        B. The School District Had a Legitimate, Non-Discriminatory Reason……………….12
        C. Goodman Cannot Meet Her Burden of Persuasion to Show That The
        School District's Explanation Was Pretextual………………………………….......14
        D. Goodman's Claims for "Failure to Hire/Failure to Promote" are Barred
        By the Doctrine of Res Judicata………………………………………………15

    2. Summary Judgment Must Be Entered in Defendant's Favor With
    Respect to Plaintiff's Title VII and PHRA Retaliation Claims……………………….16

        A. Plaintiff Cannot Establish a Prima Facie Case of Retaliation Under
        Title VII or the PHRA……………………………………………………16
           (1) Plaintiff Cannot Establish a Prima Facie Case of Retaliation Under
           Title VII for the Alleged October 2016 Incident Because There Was
           No Adverse Employment Action………………………………………….......17
           (2) Plaintiff Cannot Establish a Prima Facie Case of Retaliation Under
           Title VII or the PHRA for the Alleged October 2017 Incidents Because
           There Was No Adverse Employment Action………………………………19
              (a) The Written Complaints………………………………………….......19
              (b) The Impromptu Classroom Visits and Reviews………………………21
              (c) The Sign-In Sheets………………………………………………21
           (3) Plaintiff Cannot Establish a Prima Facie Case of Retaliation Under
           Title VII or the PHRA for the Alleged October 2017 Incidents
           Because There Was No Causal Connection Between Her Protected
           Activity and Any Adverse Action………………………………………24
              (a) The Written Complaints………………………………………24
               (b) The Impromptu Classroom Visits and Reviews………………………24
              (c) The Sign-In Sheets………………………………………………24

(4)  The School District Had a Legitimate, Non-Discriminatory Reason…………….25
     (a)  The Written Complaints…………………………………………………26
     (b)  The Impromptu Classroom Visits and Reviews……………………………26
     (c)  The Sign-In Sheets……………………………………………………26

3.  The Number of False Statements by Goodman Renders Her Version of the
Facts Unbelievable to Any Reasonable Jury……………………………………...27

CONCLUSION…………………………………………………………………………30

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 250 (1986)......................................3, 4

*Atkinson v. Lafayette College*, 460 F.3d 447, 454 n.6 (3d Cir. 2006).........................................16

*Aziz Zarif Shabazz v. Pico*., 994 F.Supp. 460, 468-471 (S.D.N.Y. 1998).....................................29

*Bates v. Tandy Corp*. 186 Fed.Appx. 288, 293-294 (3d Cir. 2006)............................................8

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 2415 (2006)...................18

*Bush v. Compass Group USA, Inc*., 683 Fed.Appx. 440, 449 (6th Cir. 2017)................................29

*Carvalho-Grevious v. Delaware State Univ*., 851 F.3d 249, 257 (3d Cir. 2017)........................26, 27

*Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548 (1986)..................................................3

*Daniels v. School Dist. of Phila*., 776 F.3d 181, 196-197 (3d Cir. 2015).....................................25

*Donaldson v. SEPTA*, 821 Fed.Appx 128, 129 n.2 (3d Cir. 2020)..............................................16

*EEOC v. Metal Service Co*., 892 F.2d 341 (3d Cir. 1990)..........................................................9

*Frompovicz v. PTS Realty Holdings, LLC*, 2018 WL 3092363, *3-4 (E.D.Pa. 2018)........................15

*Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994)........................................................13, 14

*Goodman v. Norristown Area School Dist*., 2020 WL 5292051, *4-5 (E.D.Pa. 2020)...............5, 9, 17

*Harter v. GAF Corp.,* 967 F.2d 846, 852 (3d Cir.1992)........................................................3, 6

*Hightower v. Easton Area Sch. Dist*., 818 F.Supp.2d 860, 886 (E.D.Pa. 2011).........................18,19

*Jackson v. Danberg*, 594 F.3d 210, 226-227 (3d Cir. 2010)..................................................3, 12

*Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005)..................................................28, 29

*Jones v. City of Phila*., 198 F.3d 403, 409 (3d Cir. 1999).......................................................16

iii

*Matsushita Electric Industrial Corp. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348 (1986).......3

*McDonnell Douglas Corp. v. Green*, 411 U.S. 228, 109 S.Ct. 1775 (1989)...................................16

*McLintock v. City of Phila*., 504 F.Supp.3d 411, 423 (E.D.Pa. 2020)...........................................8

*Moody v. Atl. City Bd. Of Educ*., 870 F.3d 206, 220 (3d Cir. 2017)...........................................17

*Moore v. City of Phila*., 461 F.3d 331, 340 (3d Cir. 2006)..................................................17, 18

*National State Bank v. National Reserve Bank,* 979 F.2d 1579, 1582 (3d Cir.1992).......................3

*Nunez v. Heere*, 438 F.Supp. 321, 324 (E.D.Pa. 2020)..............................................................29

*Pastore v. Bell Tel. Co. of Pa*., 24 F.3d 508, 511-512 (3d Cir. 1994)...........................................6

*Pina v. Childrens Place*, 740 F.3d 785, 799, 802 (1st Cir. 2014)................................................29

*Reich v. City of Elizabethtown, KY*, 945 F.3d 968, 980-981 (6th Cir. 2019)..................................29

*Robertson v. Allied Signal, Inc.,* 914 F.2d 360, 382-83 n.12 (3rd Cir. 1990)..............................3, 12

*Ruff v. Temple Univ*., 122 F. Supp.3d 212, 217 (E.D.Pa. 2015)...................................................5

*Sannoh v. Horizon House, Inc*., 2017 WL 4167439, *3 (E.D.Pa. 2017)................................…..11, 12

*Sarullo v. U.S. Postal Serv*., 352 F.3d 789, n.7, 797 (3d Cir. 2003)...........................................5

*St. Mary's Honor Ctr. v Hicks*, 509 U.S. 502, 113 S.Ct. 2742 (1993)...........................................14

*Vaugh v. Boeing Co*., 733 Fed.Appx. 617, 622-623 (3d Cir. 2018)...............................................17

*Wagner v. Tuscarora School Dist.,* 225 Fed.Appx. 68, 71 (3d Cir. 2007).......................................6

*Watson v. Com., Dept of Revenue*, -- Fed.Appx. --, 2021 WL 1884886, *2 (3d Cir. 2021)...............25

*Weston v. Pennsylvania*, 251 F.3d 420, 430 (3d Cir. 2001)...........................................18, 19, 23

William v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1990).......................................4

**Statutes/Rules**

Title VII of the Civil Rights Act of 1964 (Title VII)....................................................*passim*

Pennsylvania Human Relations Act (PHRA)..........................................................…....*passim*

Federal Rule of Civil Procedure 12(f)....................................................................................2

Federal Rule of Civil Procedure 56.......................................................................................3

Defendant, Norristown Area School District ("School District"), by and through its undersigned counsel, submits this Memorandum of Law in support of its Motion for Summary Judgment.

## I.     FACTS AND PROCEDURAL HISTORY

The School District incorporates the accompanying Statement of Undisputed Material Facts ("SUMF"), and all affidavits and exhibits attached thereto, as if set forth in full herein and will address pertinent facts as part of its Argument. The procedural history of this case is as follows:

Plaintiff Stephanie Goodman ("Goodman") commended this lawsuit by filing her original Complaint on March 31, 2020 (Doc. 1) asserting one count of race and age discrimination and retaliation under 42 U.S.C. § 1981 (Section 1981) (Count I), and one count of race and age discrimination and retaliation under Title VII of the Civil Rights Act of 1964 and 1991 and the Pennsylvania Human Relations Act ("PHRA") (Count II). The School District filed a Motion for Partial Dismissal and Brief in Support (Docs. 10, 10-2) on June 1. 2020. The Court issued an Order on June 17, 2020 (Doc. 16) denying the Motion as moot per the filing of Goodman's Amended Complaint (Doc. 13) on June 15, 2020.

Goodman's Amended Complaint asserted one count of race discrimination and retaliation under Title VII of the Civil Rights Act of 1964 and 1991 (Title VII) and the Pennsylvania Human Relations Act  (PHRA) (Count I), and one count of age discrimination under the Age Discrimination in Employment Act ("ADEA") and the PHRA. (Count II).  (Exhibit D-2, Amended Complaint, *Joint Appendix* (hereinafter *"JA"*) *at 0020-0042*, pp. 10 and 13) Goodman asserted her race and age discrimination claims based on the School District's "failure to hire/failure to promote" her to one of two full-time Spanish teaching positions. (*Id.*, at ¶'s 49-50, 71, 82) She based her retaliation claims on: (a) an alleged incident occurring in October 2016 after she allegedly complained to an assistant principal that she was the victim of discriminatory treatment in regard to the provision of textbooks and assignment of classroom space (*Id.*, at ¶'s 54-55, 73), (b) alleged incidents

occurring in October 2017 after she filed a PHRC Complaint in May 2017 alleging race and age discrimination and retaliation against the School District (*Id*., at ¶'s 56-57, 73), and (c) "rating her Needs Improvement at the end of the 2018-2019 school year causing her to be placed on another Performance Improvement Plan in July 2019," after she filed an Amended Complaint with the PHRC in December 2017 alleging the School District's retaliation for filing her PHRC Complaint in May 2017 (*Id*., at ¶'s 58-59, 76).

The School District filed a Motion to Dismiss Plaintiff's Amended Complaint and Brief in Support (Docs. 19, 19-2). The Court issued a Memorandum Opinion (Doc. 29) and an Order (Doc. 30) on September 4, 2020. The Court's Order granted the Motion to Dismiss in part, and denied it in part: The Court granted the Motion to Dismiss "as to Plaintiff's PHRA age and race discrimination claims; as to her PHRA retaliation claim stemming from the alleged October 16 incident; as to her PHRA retaliation claim stemming from the alleged Summer 2019 incidents; and as to her Title VII retaliation claim stemming from the alleged Summer 2019 incidents" (Doc. 30). [1] As a result of the Court's Order, Goodman's remaining claims are as follows:

Count I:

● A Title VII race discrimination claim for "failure to hire/failure to promote."

● A Title VII retaliation claim for the alleged October 2016 incident.

● A Title VII and a PHRA retaliation claim for the alleged October 2017 incidents.

(Docs, 29-30)

Count II

● An ADEA claim of age discrimination for "failure to hire/failure to promote."

The School District filed its Answer and Affirmative Defenses on September 18, 2020 (Doc. 31).

---

[1] The School District's filing included, pursuant to Fed.R.Civ.P. 12(f), a "Motion to Strike Certain Allegations of Plaintiff's Amended Complaint" (Doc. 19, 19-2). The Court granted the Motion in part and denied it in part (Doc. 30). The Court granted the Motion to Strike "as to footnote 1 of the Amended Complaint" an denied it "with respect to Paragraphs 16 and 18." (*Id*.)

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law."  Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's claim, and upon which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548 (1986).  The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. When the movant does not bear the burden of proof on the claim, the movant's initial burden may be met by demonstrating the lack of record evidence to support the opponent's claim. *National State Bank v. National Reserve Bank,* 979 F.2d 1579, 1582 (3d Cir.1992). Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial," or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Electric Industrial Corp. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348 (1986).

An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 250 (1986). The opponent cannot "merely rely upon conclusory allegations in [its] pleadings or in memoranda and briefs."  *Harter v. GAF Corp.,* 967 F.2d 846, 852 (3d Cir.1992). Mere conjecture or speculation by the party resisting summary judgment will not provide a basis upon which to deny the motion. *Robertson v. Allied Signal, Inc.,* 914 F.2d 360, 382-83 n.12 (3d Cir. 1990); *Jackson v. Danberg*, 594 F.3d 210, 226-227 (3d Cir. 2010). A nonmoving party cannot defeat summary judgment simply by asserting that a jury might disbelieve his opponent. Instead, the plaintiff must present *affirmative evidence* in order to defeat a properly supported motion for summary judgment.

3

*Liberty Lobby,* 477 U.S. at 256-57, 106 S.Ct. at 2514. Such affirmative evidence, whether it is direct or circumstantial, must amount to more than a scintilla. *William v. Borough of West Chester,* 891 F.2d 458, 460 (3d Cir. 1990).

In this case, Goodman lacks evidence to support her claims and instead relies on unsupported assertions, conclusory allegations and conjecture. In light of the appropriate standard, Goodman's unsupported claims do not allow her to survive summary judgment.

III.   **LEGAL ARGUMENT**

1.   **SUMMARY JUDGMENT MUST BE ENTERED IN DEFENDANT'S FAVOR WITH RESPECT TO PLAINTIFF'S TITLE VII AND ADEA DISCRIMINATION CLAIMS FOR "FAILURE TO HIRE/FAILURE TO PROMOTE"**

In her Amended Complaint, Goodman alleged that the School District violated Title VII and the ADEA by its "discriminatory failure to hire/failure to promote" her on the basis of both race (Count I) and age (Count II) when it did not hire her to one of two full-time Spanish Teacher positions. (Exhibit D-2, Amended Complaint, ¶'s 71, 82, *JA at 0030, 0032*) Goodman alleged that the School District discriminated against her on the basis of her race--she is African American (*Id*., at ¶ 2, *JA at 0020* )--when it "intentionally failed to notify [her] of the full-time [Spanish Teacher] openings because it preferred to hire Hispanic women." (*Id*., ¶ 50, *JA at 0026*). Goodman has produced no evidence in this case to support this allegation. (*SUMF*, ¶ 59) She based this allegation solely upon her 'belief." (*Id*.) She alleged that the School District discriminated against her based on race when it hired Pilar Gomez ("Gomez") and Francis Cruz ("Cruz") to fill these two full-time Spanish Teacher openings. (*Id*., ¶'s 43, 45*, JA at 0025*) She alleged that both women are Hispanic. (*Id*., ¶'s 36, *JA at 0025*) Goodman bases her Count II claim of age discrimination on the same allegations made in support of her Count I claim of race discrimination, substituting her age in place of her race as her alleged discriminatory basis. She alleged that the School District discriminated against her on the basis of her age--she was 59

years old at the time (*Id*., at ¶ 83, *JA at 0032*)--because Gomez was "in her 20s" and Cruz was "in her 40s"

when they were hired. (*Id*., ¶'s 84-85, *JA at 0032*)

### A. Plaintiff Cannot Establish a Prima Facie Case of Discrimination Under Title VII or the ADEA

Goodman claims that she was the victim of a "discriminatory failure to hire/failure to promote" in

violation of Title VII and the ADEA. (Exhibit D-2, Amended Complaint, ¶'s 71, 82, *JA at 0030, 0032*) As the

Courts have noted in the failure to hire or promote context:

> "We apply the three step burden shifting framework developed in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817 (1973) in employment discrimination cases alleging failure to promote. Ruff is first required to show sufficient evidence to establish a *prima facie* case: (1) he is a member of a protected class; (2) he was qualified for the position he sought to attain; (3) he suffered <u>an adverse employment action</u>; and (4) <u>the action occurred under circumstances that could give rise to an inference of discrimination</u>. *Jones v. Temple University,* No. 12-5349 WL 3389109, *7 (E.D.Pa. 2014)"

*Ruff v. Temple Univ*., 122 F. Supp.3d 212, 217 (E.D.Pa. 2015) (citation and footnote omitted) (underlines

added) (cited by *Goodman v. Norristown Area School Dist*., 2020 WL 5292051, *4 (E.D.Pa. 2020)). "This

framework applies both in Title VII and ADEA failure to hire or promote cases. 'The requirements for a prima

facie case of Title VII race discrimination and age discrimination under the ADEA are substantially the same.

The only real distinction is that for age discrimination, an individual is a member of a protected class if he is

forty years of age or older.'' *Id*., (quoting *Sarullo v. U.S. Postal Serv*., 352 F.3d 789, n.7, 797 (3d Cir. 2003)).

Here, Goodman cannot satisfy her initial burden to establish a *prima facie* case of Title VII or ADEA

discrimination. Goodman is a member of a protected class (African American and over 40 years of age), and

she was qualified for the position (Spanish Teacher).[2] However, at this summary judgment stage, she cannot

meet her burden to establish that she suffered an adverse employment action. And even assuming *arguendo*

---

[2] Plaintiff has produced no evidence that she would have been the best qualified candidate for either of the two positions even if she had "sought to attain" one of them by applying.

that she could, she cannot satisfy her burden to provide sufficient evidence that such an adverse action occurred "under circumstances that could give rise to an inference of discrimination."

At the summary judgment stage, the allegations of a plaintiff's complaint are not taken as true, and "[t]he nonmoving party cannot rely upon conclusory allegations in its pleadings to establish a genuine issue of material fact." *Wagner v. Tuscarora School Dist.,* 225 Fed.Appx. 68, 71 (3d Cir. 2007) (quoting *Pastore v. Bell Tel. Co. of Pa.,* 24 F.3d 508, 511-512 (3d Cir. 1994). "Rather, the nonmoving party 'must make a showing sufficient to establish the existence of every element essential to his case, based on the affidavits or by the depositions and admissions on file.'" *Id.* (quoting *Harter v, GAF Corp.* 967 F.2d 846, 852 (3d Cir. 1992). Goodman cannot satisfy her *prima facie* burden to demonstrate that she suffered an adverse employment action. This is so because she has no evidence, aside from the allegations of her Amended Complaint, that the School District was required to hire or promote her into one of the full-time Spanish Teacher openings even without her submitting an application.

Although Goodman alleges that she "was not required to apply for a change from part-time to full-time status" (*SUMF*, ¶ 73), she has produced no evidence in this case to support this allegation. She alleges, upon belief, "that based on Defendant's previous actions in increasing and decreasing[3] her employment status as a Spanish Teacher without an application from Plaintiff, Defendant does not have a policy requiring part-time Spanish Teachers/part-time employees to apply for full-time Spanish Teacher/full-time employee positions." (Exhibit D-2, Amended Complaint, ¶ 51, *JA at 0026*) Goodman attempted to bolster this allegation with additional bare allegations. She alleged that in May of 2014, she was rehired as a Substitute Spanish Teacher, and that "She did not have to apply to be rehired." (*SUMF*, ¶ 141) She admitted under oath,

---

[3] That the School District did not require Goodman to submit a job application for her employment status to be *decreased*, as she alleges, would not logically support her claim that the School District did not have a policy requiring part-time Spanish Teachers or other part-time employees to apply for full-time positions.

however, that in fact she did apply in order to be hired. (*SUMF*, ¶ 142)[4] Goodman also alleged that she was

hired in August 2014 as a .4 non-tenured Spanish Teacher, and that she did not have to apply to be hired.

(*SUMF*, ¶ 143) However, she testified that she did submit an application for a position as a Spanish Teacher,

on May 5, 2014. (*SUMF*, ¶'s 7, 144)  She then accepted the .4 Spanish Teacher position by July 3, 2014.

(*SUMF*, ¶ 12) In yet another effort to suggest that she was somehow entitled to be hired or promoted into

one of the full-time Spanish Teacher positions for the 2016-2017 school year without applying, Goodman

alleged that: "As of September 2014, Defendant offered [her] a .8 Spanish Teacher contract working full-time

hours[5] …. Plaintiff did not apply for the .8 contract." (Exhibit D-2, Amended Complaint, ¶ 23, *JA at 0023*) The

undisputed facts of the matter show that the School District hired Goodman for the .4 position to commence

on August 25, 2015. (*SUMF*, ¶ 15). By August 28, 2014, she had agreed to change her employment status

to a .8 position. (*SUMF*, ¶ 16) The change of the .4 *part-time position to a .8 part-time position within this*

extremely short time-span was requested by Principal Jeff Smith, who advised H.R Director Wendi Vargas[6]

that a .8 Spanish Teacher was needed due to the number of students enrolled in Spanish and a change in

the alignment of positions within the high school.  (*SUMF*, ¶'s 17-18, 20)

Goodman's allegation that the School District did not have a policy requiring part-time employees to

apply for full-time positions, intended to suggest that she was entitled to be hired or promoted into one of the

full-time Spanish Teacher openings without applying, is hollow.  She has produced no evidence to rebut H.R.

---

[4] Goodman alleged that she was "rehired" in 2014 following her former employment as a Spanish Teacher in the School District's summer school program at least seven years earlier--in 2006 and 2007. She alleged that she was rehired for the 2007 position without having to apply. She has produced no evidence to support this, or how, even if true, this would have required the School District to hire or promote her to one of the two full-time Spanish Teacher positions for the 2016-2017 school year without submitting an application.

[5] A .8 position would not be a full-time position because it is less than a 1.0 position. (*SUMF*, ¶ 13)

[6] Wendi Vargas was the School District's Director of Human Resources at all material times. (*SUMF*, ¶ 5)

Director Vargas's affidavit that in order for a part-time teacher to achieve a full-time teaching position, a full-time opening would have to be posted, the teacher would have to apply for it and the teacher would have to be awarded the position. (*SUMF*, ¶ 37) Moreover, Goodman has admitted that she was a non-tenured teacher at the time (Exhibit D-2, Amended Complaint, ¶ 22, 65, *JA at 0023, 0029*), and that her union grievance that she was entitled to one of the full-time position based on seniority was fully arbitrated and denied on or about December 17, 2018, due to her lack of tenure. (Exhibit D-2, Amended Complaint, ¶'s 63, 65, *JA at 0029*); (Exhibit D-98, Arbitration Decision 12-17-2018, *JA at 0092-0101*). Goodman's suggestion that she was entitled to be hired or promoted from her part-time Spanish Teacher position to a full-time Spanish Teacher position without applying naturally begs that questions as to how the School District could possibly do so in cases where there are two or more part-time employees and a lesser number of full-time similar positions to be filled.

### (1)  There Was No Adverse Employment Action

Given Goodman's lack of evidence to support her claim that the School District was required to hire or promote her into one of the two full-time Spanish Teacher positions even without her applying, she cannot meet her *prima facie* burden to show that she suffered an adverse employment action. *See, McLintock v. City of Phila*., 504 F.Supp.3d 411, 423 (E.D.Pa. 2020) (failure to promote not an adverse employment action in Title VII, PHRA race discrimination case since plaintiff did not apply for the position; summary judgment granted for failure to establish *prima facie* case). Since Goodman never submitted an application for one of the full-time openings, there was simply no action, adverse or otherwise, taken by the School District. *And see*, *Bates v. Tandy Corp*. 186 Fed.Appx. 288, 293-294 (3d Cir. 2006), where the Third Circuit Court held that plaintiffs' Title VII race discrimination claim for failure to promote was properly dismissed on summary judgment for failure to establish a *prime facie* case because they did not complete the application process. Even if Goodman was unaware of the job postings as she alleged, this was the result of her own failure to

8

look. The two jobs became vacant when Michele Cesena and Danielle Regan submitted July 25, 2016 letters notifying the H.R. Department that they were retiring and resigning, respectively, and the jobs were posted starting August 2, 2016. (*SUMF*, ¶'s 60-62). Ten individuals did check and applied for the positions. (SMF, ¶ 42) Goodman has also failed to provide evidence for her allegation that the School District intentionally failed to notify her that Spanish Teachers Michele Cesena and Danielle Regan were retiring, and their full-time positions would be filled. (Exhibit D-2, Amended Complaint, ¶'s 41, 46, 49, *JA at 0025-0026*) In particular, she has admitted that everyone should be notified of job openings in the same way, and that there should be no favoritism shown to any employee. (*SUMF*, ¶ 71) Nor does she have evidence to support her allegation that the School District "advised Ms. Gomez and Ms. Cruz of the full-time openings and told them to apply so that they could be hired." (*SUMF*, ¶'s 68-69) In short, Goodman has failed to demonstrate with evidence that the School District took any adverse action against her in any of the ways she has alleged, or otherwise. On this basis alone, she cannot demonstrate a *prima facie* case of Title VII or ADEA discrimination.[7]

### (2) Goodman Suffered No Adverse Action Under Circumstances That Could Give Rise to an Inference of Discrimination

Goodman has no evidence to satisfy the fourth element of a *prima facie* case of discrimination under Title VII or the ADEA: that she suffered an "[adverse] action that occurred under circumstances that could give rise to an inference of discrimination." *See Ruff, supra*. Goodman has presented only the unsupported allegations of her Amended Complaint in an effort to meet her burden. She alleged that the School District

---

[7] This Court already has held that Goodman's legal conclusion in Paragraph 72 of her Amended Complaint, in which she relies upon her interpretation of the decision in *EEOC v. Metal Service Co*., 892 F.2d 341 (3d Cir. 1990), is inapplicable to the clearly different facts of this case. *Goodman, supra* at *4 n.4. Goodman alleged that the *Metal Service* case simply stood for the proposition that "where an employer fails to notify its own African American employee of a vacancy and instead goes outside the company to hire a worker outside its employee's protected class, a qualified African American employee has a prima facie case of discriminatory hiring based on race." (Exhibit D-2, Amended Complaint, ¶ 72, *JA at 11*)

was aware of the pending retirements[8] of Ms. Cesena and Ms. Cruz prior to reducing her teaching position from .8 to .4. (*SUMF*, ¶ 63) She has admitted that she could not identify any school administrator who knew that they were retiring. (*SUMF*, ¶ 64) She has no evidence that anyone at the School District was aware of the planned retirement of Ms. Cesena or the resignation of Ms. Cruz prior to receipt of their respective July 25, 2016 letters to the Human Resources Department. (*SUMF*, ¶ 65) Goodman attempts to support her claim with an additional allegation that she was advised in a letter dated August 10, 2016 that the School District was changing her status from a .8 Spanish Teacher to a .4 Spanish Teacher effective August 29, 2016 at a salary of $31,349.20…." (*SUMF*, ¶ 27) Although suggesting that she had no notice of the reduction in her part-time position until after July 25, 2016, Goodman also alleged, without providing any timeframe, that she received notice of the reduction *prior to* receipt of the August 10, 2016 letter. (*SUMF*, ¶ 28) She also qualified later in her Amended Complaint that the August 10, 2016, letter was the "official" notice that she received of the reduction of her hours from .8 to .4. (Exhibit D-2, Amended Complaint, ¶ 40, *JA at 0025*) Additionally, Goodman testified that she was called to a meeting with Principal Smith and Assistant Principal Chris Stein,[9] in June of 2016, in which they "said that there was a possibility of [her] contract being decreased." (*SUMF*, ¶'s 32-33) Goodman testified that budget cuts and decreased enrollment was a constant topic during teacher contract negotiations at this time, that she saw a newspaper article about this, and that there was discussion about budgetary challenges in the School District. (*SUMF*, ¶'s 29-30) Furthermore, the publicly available minutes of the Norristown Area School District Board of Directors ("School Board") meeting of June 27, 2016, show the School Board's unanimous 9-0 vote approving the "2016-17 Final General Fund Budget." (*SUMF*,

---

[8] While Michele Cesena submitted notice of her retirement, Danielle Regan submitted notice of her resignation. (*SUMF*, ¶ 41)

[9] Mr. Stein was an Assistant Principal at Norristown Area High School ("NAHS") at this time. (*SUMF*, ¶ 52)

¶ 34) The June 27, 2016 budget approval included among multiple budget-related items: "Modification of NAHS Spanish teaching position from .8 FTE to .4 FTE."[10] (*SUMF*, ¶ 34) The School Board's budgetary action occurred four weeks prior to Ms. Cesena and Ms. Cruz' respective retirement and resignation letters of July 25, 2016.

While Goodman suggests that she could not have been expected to look for any full-time openings in light of the decrease in her hours "due to budget cuts and decreased enrollment" (Exhibit D-2, Amended Complaint, ¶ 33, *JA at 0024*), she has admitted that knowledge of the District's "budgetary challenges" and "budget cuts and decrease in enrollment" was widely known. (*SUMF*, ¶'s 29-30) Nevertheless, 10 other individuals applied for the position that was publicly posted on the District website from August 2, 2016 through August 12, 2016. (*SUMF*, ¶'s 40, 42)[11] In sum, Goodman has provided no evidence to support her conjecture that the School District implemented a plan for Principal Smith and Assistant Principal Stein to advise her in June of 2016 of a possibility that her hours would be reduced due to budget cuts and decreased enrollments, with the hope she would be dissuaded from checking the District's job posting site should any full-time Spanish Teacher retire or resign prior to the start of the next school year.

Although Goodman may harbor a personal belief that some decisionmaker, or anyone, at the School District was aware of the pending retirement and resignation of Ms. Cesena and Ms. Cruz prior to the decision being made to reduce her hours, "an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment." *Sannoh v. Horizon House, Inc*., 2017

---

[10] "FTE" stands for "Full-Time Equivalent." (*SUMF*, ¶ 34)

[11] Although Goodman alleged that the School District posted the full-time Spanish Teacher openings on August 8, 2016, this allegation is false. (*SUMF*, ¶ 40; Exhibits D-120, *JA at 0111*; Exhibit D-111, *JA at 0104*) It was posted on August 2, 2016. (*SUMF*, ¶'s 40, 61) She also falsely suggests that Ms. Gomez somehow was able to submit her application four days prior to the prior to the alleged posting on August 8, 2016 – on August 4, 2016. (Exhibit D-2, Amended Complaint, ¶ 39, *JA at 0025*).

WL 4167439, *3 (E.D.Pa. 2017) (quoting *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990); *Jackson v. Danberg*, 594 F.3d 210, 226-227 (3d Cir. 2010). She cannot satisfy the element of a *prima facie* case of discrimination under Title VII or the ADEA that an adverse action occurred under circumstances that could give rise to an inference of discrimination. She has merely suggested, as well, that she would have been selected, or somehow that she would have been entitled to be selected, for one of the two full-time positions if she had become aware and had applied – even despite her past job performance issues and lack of tenure. Such an allegation is more conjecture. In fact, Goodman had been disciplined during the Summer of 2015 with a five-day suspension to be served during September and October of 2015 due to excessive lateness despite warnings, failing to follow appropriate sign-in procedures and leaving students unattended. (*SUMF*, ¶'s 22-26) Rather than going to such alleged lengths with the hope that Goodman might not learn of the job posting, there was nothing to prevent the decisionmakers from simply not selecting her for one of the positions even if she had applied. She had no automatic entitlement.

### B.  The School District Had a Legitimate, Non-Discriminatory Reason

As stated in Section A(I), above, since Goodman never submitted an application for one of the full-time openings, there was simply no action, adverse or otherwise, taken by the School District in regard to any decision to hire or promote her into one of the positions. To the extent that she alleged that the School District "manipulated the hiring process by intentionally not advising Plaintiff of the full-time openings because Defendant preferred to hire Hispanic women" (Exhibit D-2, Amended Complaint, ¶ 50, *JA at 0026)*;(*SUMF*, ¶ 66) who also were younger than her (Exhibit D-2, Amended Complaint, ¶'s 83-85, *JA at 0032*), Goodman has provided no such evidence. In regard to her allegation that the School District advised Ms. Gomez and Ms. Cruz of the openings so that they could apply and be hired (*SUMF*, ¶ 68), she has produced no such

evidence.[12] To the extent she alleged that she was somehow entitled to be placed into one of the full-time positions without having to apply, she has produced no evidence of such entitlement. To the contrary, Goodman has admitted that (a) she was non-tenured (*SUMF*, ¶ 76), and (b) everyone should be notified of job openings in the same way, and that there should be no favoritism shown to any employee. (*SUMF*, ¶ 71) This is precisely what the School District did when it followed its standing practice of posting job openings at the School District on its website using the "Recruit and Hire" online application system. (*SUMF*, ¶'s 38-40)

Accordingly, even assuming *arguendo* that Goodman could meet her burden to establish a *prima facie* case of race or age discrimination against the School District, the School District had a legitimate, non-discriminatory reason for its action of posting the full-time Spanish Teacher openings and application on its website without personally informing Goodman. As the controlling law makes clear:

> "If the plaintiff succeeds [in establishing a *prima facie* case], the burden of *production* shifts to the defendant to articulate some <u>legitimate, nondiscriminatory reason</u> for the employee's rejection. The employer satisfies its burden of production by introducing evidence which, <u>taken as true</u>, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision. The employer need not prove that the tendered reason *actually* motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff. Once the employer answers its <u>relatively light burden by articulating a legitimate reason for the unfavorable employment decision</u>, the burden of production rebounds to the plaintiff, who must now show by a preponderance of the evidence that the employer's explanation is pretextual (thus meeting the plaintiff's burden of persuasion)."

*Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994) (citations omitted). Although the *Fuentes* Court referenced a defendant's legitimate, non-discriminatory reason for its "unfavorable employment decision," in Goodman's case there was no affirmative "unfavorable employment decision." This is so because the School District followed its normal practice of posting job openings on its website, and Goodman did not apply. As the School District is presenting its argument in this section in the context of assuming *arguendo* that

---

[12] As noted above, there were eight other individuals in addition to Ms. Gomez and Ms. Cruz who submitted applications using the School District's online "Recruit and Hire" system. (*SUMF*, ¶'s 38, 40, 42)

Goodman somehow could establish a *prima facie* case, it likewise presents its argument that it had a legitimate, non-discriminatory reason for following its normal job posting and hiring practice without providing personal notice to Goodman. Goodman contradicts her own claim that she should have been notified by alleging--albeit without evidence--that the School District manipulated the hiring process by "advis[ing] Ms. Gomez and Ms. Cruz of the upcoming full-time Spanish Teacher openings." (*SUMF*, ¶ 68) She alleged that Ms. Gomez completed her student teaching assignment at NAHS, and Ms. Cruz was employed at NAHS as an LTS ESL (Long-Term Substitute English for Speakers of Other Languages teacher. Goodman, who admittedly was non-tenured at the time, would have had no greater right than Ms. Gomez or Ms. Cruz to be personally notified of the job openings.

### C. Goodman Cannot Meet Her Burden of Persuasion to Show That the School District's Explanation Was Pretextual

The law is well-settled that once the employer asserts a legitimate, non-discriminatory reason for its challenged action, "the burden of production rebounds to the plaintiff, who must now show by a preponderance of the evidence that the employer's explanation is pretextual (thus meeting the plaintiff's burden of persuasion)." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994).

> "At trial, the plaintiff must convince the factfinder '*both* that the reason was false, *and* that discrimination was the real reason. It is not enough ... to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination.' (emphasis in original). The factfinder's rejection of the employer's proffered, legitimate reason *permits,* but does not compel, a verdict for the plaintiff. The test is whether the plaintiff ultimately persuades the factfinder that the employment decision was caused by bias, and for that purpose both the plaintiff's prima facie case and the factfinder's rejection of the employer's proffered evidence are circumstantial evidence of unlawful discrimination."

*Id*. (citing and quoting *St. Mary's Honor Ctr. v Hicks*, 509 U.S. 502, 113 S.Ct. 2742 (1993)). Goodman has provided no evidence aside from bare allegations to refute the School District's explanation that it followed its normal job posting and hiring practice for the two full-time Spanish Teacher openings after Ms. Cesena submitted notice of her retirement and Ms. Regan submitted notice of her resignation by their July 25, 2016

letters to the Human Resources Department. Summary judgment is wholly appropriate and Goodman's claims of race and age discrimination under Title VII and the ADEA must be dismissed.

### D. Goodman's Claims for "Failure to Hire/Failure to Promote" are Barred by the Doctrine of Res Judicata

Goodman alleged that she filed a union grievance that she was entitled to one of the full-time positions based on seniority under the governing Collective Bargaining Agreement ("CBA"). (*SUMF* ¶ 48). Her grievance was fully arbitrated, and her claim was denied on or about December 17, 2018, due to her lack of tenure. (*SUMF*, ¶ 48) Goodman has admitted that she could have brought her discrimination claim in that grievance arbitration. (*SUMF*, ¶ 49) Under the doctrine of technical *res judicata*, a claim that *could have been* brought in a prior arbitration proceeding, but was not, is barred from being pursued in court. *Frompovicz v. PTS Realty Holdings, LLC*, 2018 WL 3092363, *3-4 (E.D.Pa. 2018).

> "Application of technical res judicata requires four elements: '(1) identity of the thing sued upon or for; (2) identity of the causes of action; (3) identity to the persons or parties to the action; and (4) identity of the quality or capacity of the parties being sued.' The 'essential inquiry is whether the ultimate and controlling issues have been decided in a prior proceeding in which the present parties had an opportunity to appear and assert their rights.'".

*Id.* ("Fundamentally, because Plaintiff could have--but did not--assert the claims in his current Complaint during the arbitration he is prevented from returning to the well in federal court.") As in *Frompovicz*, all of the required elements are satisfied as to the claims Goodman *could have brought* in the grievance arbitration: the "thing sued upon" is the CBA; Goodman's discrimination claim for failure to hire/promote; and the parties and capacity of the parties are the same: Goodman and the School District. This is the case because the CBA provides an anti-discrimination clause including race and age (*SUMF*, ¶ 49; Exhibit D-141, *JA at 0494*), and allows grievance for "an alleged misinterpretation or misapplication of the provisions of the collective bargaining agreement" (*Id., JA at 0523*). Accordingly, in addition to her claim that the School District violated the CBA for not assigning her to one of the two full-time positions based on seniority (Exhibit D-98, Arbitration

15

Decision, *JA at 0092*), she *could have* brought her discrimination claim pursuant to the CBA. Because she chose not to, her claim for race and age discrimination must be dismissed by application of *res judicata*.

### 2.   SUMMARY JUDGMENT MUST BE ENTERED IN DEFENDANT'S FAVOR WITH RESPECT TO PLAINTIFF'S TITLE VII AND PHRA RETALIATION CLAIMS

In her Amended Complaint, Goodman alleged that she was subjected to retaliation in violation of Title VII in October 2016 ("October 2016 incident") after she engaged in protected activity in September 2016 "when she made verbal complaints to Assistant Principal Chris Stein about the discriminatory treatment based on race and age and [sic] that she was receiving in regards materials and access to workspace" ("September 2016 Complaints"). (*SUMF*, ¶ 77)  She also alleged that she was subjected to retaliation in violation of Title VII and the PHRA in October 2017 ("October 2017 incidents") after she engaged in protected activity when she "filed her [PHRC] Complaint on or about May 3, 2017 alleging that Defendant discriminated against her on the basis of age, race and retaliation." (*SUMF*, ¶ 100)

As the Third Circuit Court has held, a plaintiff's burden of proof in the context of a Title VII or PHRA retaliation claim is governed by the same burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 228, 109 S.Ct. 1775 (1989); *Donaldson v. SEPTA*, 821 Fed.Appx 128, 129 n.2 (3d Cir. 2020); *Atkinson v. Lafayette College*, 460 F.3d 447, 454 n.6 (3d Cir. 2006); *Jones v. City of Phila.*, 198 F.3d 403, 409 (3d Cir. 1999) (standards for determining summary judgment are the same for Title VII and the PHRA). Accordingly, Goodman's Title VII claim for the alleged October 2016 incident, and her Title VII and PHRA claims for the alleged October 2017 incidents, are subject to analysis under the same legal framework.

### A.   Plaintiff Cannot Establish a Prima Facie Case of Retaliation Under Title VII or the PHRA

"A plaintiff pleading retaliation under Title VII and the PHRA, [n.6] must allege facts sufficient to suggest '(1) that she engaged in protected activity; (2) adverse action by the employer after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action. [n.6] With respect to whether a plaintiff has stated a claim that is plausible on its face, Title VII and

16

PHRA claims may be analyzed "in the singular because the same framework ... applies to both." *Connelly*, 809 F.3d at 792 n. 9."

*Goodman v. Norristown Area School District*, 2020 WL 5292051, *5 (E.D.Pa. 2020) (footnote omitted) (citing *Moody v. Atl. City Bd. Of Educ.*, 870 F.3d 206, 220 (3d Cir. 2017). *Accord, Vaugh v. Boeing Co.*, 733 Fed.Appx. 617, 622-623 (3d Cir. 2018) (citing *Moore v. City of Phila.*, 461 F.3d 331, 340 (3d Cir. 2006)).

**(1)   Plaintiff Cannot Establish a Prima Facie Case of Retaliation Under Title VII for the Alleged October 2016 Incident Because There Was No Adverse Employment Action**

Goodman alleged that she suffered retaliation after her September 2016 Complaints to Assistant Principal Chris Stein. (*SUMF*, ¶'s 77, 81-82; Exhibit D-2, Amended Complaint, ¶'s 73-74, *JA at 0031*) She alleged that Assistant Principal Stein retaliated against her by providing "misinformation to Plaintiff during the Student Learning Objectives (SLO) process[13] causing her to sustain lower performance ratings than her younger, Caucasian counterparts lending to an overall Unsatisfactory rating. Specifically, Defendant required Plaintiff to use data points that her younger, Caucasian counterparts were instructed to omit." (*SUMF*, ¶ 81) Goodman testified that the "misinformation" allegedly provided to her by Assistant Principal Stein was that he "did not allow her to omit my students that had an IEP[14] as he did my Caucasian counterparts." (*SUMF*, ¶ 85) She testified that the "data points" referenced in her Amended Complaint also referred to the alleged requirement that she had to include her students with IEP's during the SLO process. (*SUMF*, ¶ 87) She has provided no evidence in this case that she was provided with her alleged "misinformation" or "data points."

---

[13] The Student Learning Objectives ("SLO") process is a process "to document a measure of educator effectiveness based on student achievement of content standards," and involves the completion of individual SLO reports by teachers. (*SUMF*, ¶ 84)

[14] An "IEP" is an Individualized Educational Plan for a. particular student. (*SUMF*, ¶ 86),

Contrary to Goodman's allegations, there was no misinformation provided to her in regard to the SLO process, and she was not rated "Unsatisfactory" as she alleged. All of Goodman's counterparts were expressly instructed to include their students with IEPs in their SLO reports. This communication of the IEP student-inclusion requirement included a group email sent to Goodman and the rest of the World Language Teacher (her "counterparts") by Spanish Teacher and World Language Department Chairperson, Leah Garman. (*SUMF*, ¶'s 83, 88) Garman also advised Goodman personally of this universal requirement for completing the SLO reports. (*SUMF*, ¶ 89) Furthermore, Goodman has provided no evidence that she was rated "Unsatisfactory." The obvious reason for her inability to provide such evidence is the fact that she was rated "Satisfactory." (*SUMF*, ¶'s 90-99)

Given Goodman's lack of evidence to support her allegations that she was provided with "misinformation" during the SLO process and that she was rated "Unsatisfactory," she cannot establish a *prima facie* case of retaliation in regard to the alleged October 2016 Incident. Her *prima facie* case fails as well in light of the uncontroverted evidence provided by the School District that Goodman's allegations about receiving "misinformation" and being rated "Unsatisfactory" are both false. Her claim of retaliation in violation of Title VII for her alleged October 2016 Incident must be dismissed because she cannot demonstrate that the School District subjected her to any adverse action as she alleged.

An adverse action for purposes of a retaliation claim is defined as an action "that a reasonable employee would have found [to be] 'materially adverse' in that they 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Moore v. City of Phila.*, 461 F.3d 331, 341 (3d Cir.2006) (*quoting Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 2415 (2006)). In this regard, our Court of Appeals has "specifically found oral reprimands not sufficiently adverse to qualify under [Title VII]." *Weston v. Pennsylvania*, 251 F.3d 420, 430 (3d Cir. 2001) (cited in *Hightower v. Easton*

*Area Sch. Dist.*, 818 F.Supp.2d 860, 886 (E.D.Pa. 2011), as amended (Oct. 3, 2011). Written reprimands alone are not sufficient to establish that an adverse action has been taken. The Third Circuit explained:

> "Title VII specifically prohibits action which would 'deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee.' 42 U.S.C. § 2000e–2(a). The Supreme Court has defined a tangible, adverse employment action as a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment, or a decision causing a significant change in benefits.' *Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742, 749, 118 S.Ct. 2257, 2268, 141 L.Ed.2d 633 (1998). In the context of this case, Weston must show, among other things, that these written reprimands affected the terms or conditions of his employment.
>
> * * * We conclude, however, that Weston failed to establish how these two reprimands effect a material change in the terms or conditions of his employment. We cannot, therefore, characterize them as adverse employment actions.

*Weston v. Pennsylvania*, 251 F.3d 420, 430–31 (3d Cir. 2001). In Goodman's case, she has not alleged even that she was subjected to any oral or written reprimand in connection with the SLO process. She falsely alleged only that she was rated "Unsatisfactory." She has provided no evidence that she was actually rated "Unsatisfactory," and in fact, she was rated "Satisfactory." (*SUMF*, ¶'s 90-99) Under these standards, Goodman has not been subjected to any "adverse action" with respect to the alleged October 2016 Incident, and her claim must be dismissed.

**(2) Plaintiff Cannot Establish a Prima Facie Case of Retaliation Under Title VII or the PHRA for the Alleged October 2017 Incidents Because There Was No Adverse Employment Action**

Goodman alleged in her Amended Complaint that she was subjected to retaliation starting in October 2017 after she filed a PHRC Complaint against the School District in May of 2017. She has listed these alleged October 2017 Incidents in bullet-point fashion. (*SUMF*, ¶ 100)

**(a) The Written Complaints**

Goodman's first allegations of retaliation is that the school administration, Assistant Principal Stein or disciplinary office staff, and school counselors, instructed students "to write-up complaints about her."

19

(SUMF, ¶ 101) She has provided no evidence to support this allegation. She alleged that "Student and parents advised Plaintiff that the school administration was seeking negative reviews about Plaintiff from students and parents." (Exhibit D-2, Amended Complaint, ¶ 57, first bullet point, *JA at 0027*) Goodman has provided no evidence to support this allegation. She has produced no evidence that any student was asked to write their statement about her for any reason other than to investigate the student's own complaint about her. The School District's procedure for following up on student complaints about teachers, received from students directly or related by their parents, is implemented uniformly in regard to such complaints. (*SUMF*, ¶ 109; Exhibit P-13, Roth Complaint Response, *JA at 0448* and Exhibit D-1, PHRC Amended Complaint, ¶'s 66-70, *JA at 0007-0008*) Goodman has provided no contrary evidence. She has never investigated student complaints, and she has never read professional literature as to the process to investigate such matters. (*SUMF*, ¶'s 102-103)  She admitted that she has no expertise as to how student complaints should be investigated.  (*SUMF*, ¶ 103) She has not identified any specific complaint and has not denied the reasonableness or validity of any specific complaint.

Contrary to her unsupported allegation that students were not asked to write complaints about non-African American teachers (Exhibit D-2, Amended Complaint, ¶ 57, first bullet point, *JA at 0027-0028*), Goodman has admitted that she actually has no knowledge whether students complained about other teachers or whether such complaints were written. (*SUMF*, ¶ 108) Her unsupported allegation that non-African American teachers were treated differently (Exhibit D-2, Amended Complaint, ¶ 57, first bullet point, *JA at 0027-0028*) is mere conjecture. Of particular significance, Goodman has not even alleged that the writing or investigation of any complaint about her resulted in any adverse consequence whatsoever. In light of the lack of evidence to support her allegations in regard to the handling of complaints put in writing about her, her admission that she had no knowledge in regard to the handling of complaints against other teachers,

and the lack of any resulting adverse consequence, Goodman cannot establish a *prima facie* case that she suffered any adverse action as retaliation for filing her PHRC Complaint in May 2017.

**(b)  The Impromptu Classroom Visits and Reviews**

Goodman alleges that, in retaliation for filing her PHRC Complaint, she was subjected to "Impromptu classroom visits by the Vice-Principal[15] and reviews while no such visits or reviews were conducted on the Spanish teachers outside of her protected class." (*SUMF*, ¶ 111) This allegation is more conjecture, and false. Goodman has provided no evidence that similar visits and reviews were not conducted on other Spanish teachers outside her protected class. All Spanish teachers--and all classroom teachers--at the high school were the subjects of visits and reviews including *unannounced visits and reviews* by assistant principals or other administrators during the 2017-2018 school year, (*SUMF*, ¶'s 113-114) Supervisors or other administrators of classroom teachers are required to conduct such visits and reviews. (*SUMF*, ¶ 112)

Because Goodman has no evidence to support her allegation that other Spanish teachers outside her protected class were not subjected to similar "impromptu visits and reviews," she cannot demonstrate that she suffered any adverse action in this regard as retaliation for having filed her PHRC Complaint. The School District for its part has presented uncontroverted evidence that all classroom teachers were subjected to similar visits and reviews during the 2017-2018 school year "for purposes of annually evaluating and rating their performance." (*SUMF*, ¶'s 112-114) Goodman's claim of retaliation must be dismissed.

**(c)  The Sign-In Sheets**

Goodman next alleged three incidents that allegedly occurred with respect to her daily sign-in sheets. (*SUMF*,  ¶'s 115, 126, 132) She alleged that on October 5, 2017, Theresa Henning, a school secretary, "attempted to prevent Plaintiff from signing in for work by not making the sign-in sheet available." (*SUMF*, ¶

---

[15] The terms "Vice Principal" and "Assistant Principal" are used interchangeably for these positions at NAHS.

21

115) Goodman has provided no evidence to support her allegation that Ms. Henning *attempted to prevent her* from signing in as alleged. She has not even alleged, let alone provided evidence, that Ms. Henning was aware of her filed PHRC Complaint or why, especially as a school secretary, she would have any motive to retaliate in any case. Goodman has not alleged that she was prevented from signing in. To the contrary, the School District has provided uncontroverted evidence that Goodman did sign in on that date and provided evidence to explain the mischaracterization of the simple event by Goodman. (*SUMF*, ¶'s 116-121) Goodman has admitted that on such occasions where the sign-in sheet was not seen in its usual place, Ms. Henning provided her with the sign-in sheet immediately, and she signed in. (*SUMF*, ¶ 122-123; Exhibit D-135, *JA at 0293*).

Next, Goodman alleged that "On October 17, 2017 Plaintiff worked a full shift, but someone signed her in for a half-day." (*SUMF*, ¶ 126) Goodman has provided no evidence that this erroneous entry on her sign-in sheet was done intentionally, let alone with any retaliatory motive or intent by Ms. Henning. The School District has provided uncontroverted evidence that Goodman did sign in for a full day on that date, and to explain what actually had occurred. (*SUMF*, ¶'s 127-131; Exhibit D-135, *JA at 0294*)

Finally, Goodman alleged that "On October 24, 2017 Plaintiff attempted to sign in and Ms. Hennings [sic] advised that she had signed in for the day. Plaintiff looked at the sign-in sheet to find that her initials on the sign-in sheet were not made by her." (*SUMF*, ¶ 132)  Goodman has provided no evidence to support his allegation, nor any evidence as to whom allegedly signed initials in her block on the sign-in sheet, how this occurred, or whether the alleged unidentified person had any intent to sign in her block or had any knowledge of her PHRC Complaint. The School District has provided uncontroverted evidence that Goodman did sign in on that date, in her own block, on the sign-in sheet. (*SUMF*, ¶'s 133-134; Exhibit D-135, *JA at 0295*) Goodman does not allege that she was prevented from signing in on any of these three occasions, or that any of these three alleged incidents resulted in any adverse consequence for her. In fact, given the fact that

22

Goodman necessarily would, and did, see the sign-in sheet upon her arrival for work on these dates, any errors as she alleged would have been made known to her immediately and addressed accordingly--as occurred.

In light of Goodman's lack of evidence that any alleged errors with respect to her sign-in sheet on these three dates had any connection with the filing of her PHRC Complaint, and the lack of any evidence that such alleged errors caused her any adverse consequence, she cannot demonstrate that she suffered an adverse action in retaliation for filing her PHRC Complaint. As set forth in Section II(A)(1), above, our Court of Appeals has held that oral reprimands and written reprimands alone are not sufficiently adverse to qualify under Title VII. *Weston,* supra at 430  (cited in *Hightower v. Easton Area Sch. Dist*., supra at 886).  To reiterate, in part:

> "Title VII specifically prohibits action which would 'deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee.' The Supreme Court has defined a tangible, adverse employment action as a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment, or a decision causing a significant change in benefits.' In the context of this case, Weston must show, among other things, that these written reprimands affected the terms or conditions of his employment."

*Weston*, supra at 430-31 (citation omitted). Goodman has *not even alleged* that she was subjected to any oral or written reprimand, suffered any significant change in her employment status or any adverse consequence in the terms and conditions of her employment in connection with the alleged October 2017 Incidents. Given the lack of any such allegations, she likewise has provided no evidence to support any adverse action under Title VII or the PHRA. Goodman has not been subjected to any "adverse action" with respect to the alleged October 2017 Incidents, and her claims must be dismissed.

**(3) Plaintiff Cannot Establish a Prima Facie Case of Retaliation Under Title VII or the PHRA for the Alleged October 2017 Incidents Because There Was No Causal Connection Between Her Protected Activity and Any Adverse Action**

Assuming *arguendo* that the Court should find that Goodman can satisfy the *prima facie* element that she was subjected to any adverse action for filing her PHRC Complaint in May 2017, her claims nevertheless must be dismissed because she cannot demonstrate a causal connection between her protected activity in filing the PHRC Complaint and any alleged adverse action.

**(a) The Written Complaints**

Goodman cannot demonstrate any causal connection between the filing of her PHRC Complaint and any written student complaints about her as alleged. She merely makes the allegation that written complaints were solicited from students by the School District as retaliation, without any evidence offered to support the allegation. The fact that students were asked to put complaints about Goodman in writing, without more, does not evidence that this was done for any retaliatory purpose--as opposed to documenting such complaints for investigation.

**(b) The Impromptu Classroom Visits and Reviews**

Goodman cannot demonstrate any causal connection between the filing of her PHRC Complaint and the "Impromptu classroom visits by the Vice-Principal and reviews while no such visits and reviews were conducted on other Spanish teachers outside of her protected class." Once again, she merely makes her allegation without providing evidence. The fact that she was subjected to such visits and reviews, standing alone, does not evidence that she was treated differently than any other teacher.

**(c) The Sign-In Sheets**

Goodman cannot demonstrate any causal connection between the filing of her PHRC Complaint and any of the alleged incidents regarding the daily sign-in sheet on October 5, October 17 or October 24, 2017, as alleged. She makes these allegations without providing evidence of any retaliatory motive, let alone the

identity of any individual with knowledge of her PHRC Complaint performing any action, intentional or otherwise, with respect to the sign-in sheet. As the Third Circuit Court has held:

> "The plaintiff … cannot establish that there was a causal connection without some evidence that the individuals responsible for the adverse action knew of the plaintiff's protected conduct at the time they acted. *See Andreoli v. Gates,* 482 F.3d 641, 650 (3d Cir.2007); *Moore,* 461 F.3d at 351; *cf. Ambrose v. Twp. of Robinson,* 303 F.3d 488, 493 (3d Cir.2002) ('It is only intuitive that for protected conduct to be a substantial or motiving factor in a decision, the decisionmakers must be aware of the protected conduct.')."

*Daniels v. School Dist. of Phila*., 776 F.3d 181, 196-197 (3d Cir. 2015) (Even if close temporal proximity exists between protected activity and adverse action, causal connection cannot be established without evidence that individuals responsible knew of the protected activity at the time they acted). *Accord, Watson v. Com., Dept of Revenue*, -- Fed.Appx. --, 2021 WL 1884886, *2 (3d Cir. 2021) Goodman has identified only two individuals, Assistant Principal Stein and Theresa Henning, as somehow involved in the alleged October 2017 Incidents. She has provided no evidence that either individual was aware that she had filed her PHRC Complaint at any time prior to October 2017. She has not identified any other individual involved in her alleged October 2017 Incidents, and therefore has provided no evidence of any other individual's awareness. In light of Goodman's lack of evidence of any causal connection between the filing of her PHRC Complaint and any of the alleged October 207 Incidents, she cannot demonstrate a *prima facie* case of retaliation under Title VII or the PHRA. Her Amended Complaint must be dismissed.

### (4)   The School District Had a Legitimate, Non-Retaliatory Reason

"After establishing a prima facie case of retaliation, the burden shifts to the employer to provide a legitimate non-retaliatory reason for its conduct. *Moore*, 461 F.3d at 342. If it does so, the burden shifts back to the plaintiff "to convince the factfinder both that the employer's proffered explanation was false [that is, a pretext], and that retaliation was the real reason for the adverse employment action." *Id.* The onus is on the plaintiff to establish causation at two stages of the case: initially, to demonstrate a causal connection as part of the prima facie case, and at the final stage of the *McDonnell Douglas* framework to satisfy her ultimate burden of persuasion by proving pretext."

*Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017) Although it is clear that Goodman cannot state a *prima facie* case of retaliation, even if assumed *arguendo* that she could, the District has satisfied any burden of demonstrating that any actions claimed as retaliation by Goodman in connection with her alleged October 2017 Incidents were done for legitimate, non-retaliatory reasons.

### (a)  The Written Complaints

The School District has provided uncontroverted evidence that any written student statements about which Goodman complained were requested from students who had raised their own complains about her and felt comfortable putting their complaints in writing. (*SUMF*, ¶ 109) The student's statements were reviewed by Principal Ed Roth for his investigation and conference with Goodman to discuss them. (*Id*.; Exhibit D-137, *JA at 0329*) Student complaints about other teachers were handled in the same way by Principal Roth. (*SUMF*, ¶ 109) The purpose of requesting any student complaint in writing was for Principal Roth to review it and determine whether a formal investigation was necessary, which would include having a conference with the teacher to discuss it. (*Id*.)

### (b)  The Impromptu Classroom Visits and Reviews

The School Dis8trict had a legitimate, non-retaliatory reason for conducting unannounced classroom visits and review of Goodman. As articulated in Section II(A)(2)(b), all classroom teachers at the high school were the subjects of visits and reviews including *unannounced visits and reviews* by assistant principals or other administrators during the 2017-2018 school year, (*SUMF*, ¶'s 112-114)  Supervisors or other administrators of classroom teachers are obligated to conduct such visits and reviews. (*SUMF*, ¶ 112)

### (c) The Sign-In Sheets

Goodman has not alleged any action with respect to the sign-in sheets that would require an analysis under the School District's "legitimate non-retaliatory reason" burden of production. The School District has provided uncontroverted evidence of the actual facts related to Goodman's sign-in sheet allegations. In light

26

of all the preceding: "The onus is on the plaintiff [Goodman] to establish causation … to satisfy her ultimate burden of persuasion by proving pretext." *Carvalho-Grevious v. Delaware State Univ*., 851 F.3d 249, 257 (3d Cir. 2017). She has no such evidence.

### 3. The Number of False Statements by Goodman Renders Her Version of the Facts Unbelievable to Any Reasonable Jury

Goodman has admitted under oath that allegations she previously made and verified were not accurate. In her Amended Complaint, she falsely alleged that: "In or about May 2014 … Plaintiff was rehired by Defendant as a Substitute Spanish Teacher. She did not have to apply to be rehired." (*SUMF*, ¶ 141) She has admitted, however, that she did apply. (*SUMF*, ¶ 142) She also falsely alleged that: "In August 2014, Plaintiff was hired as a .4 non-tenured Spanish Teacher teaching two (2) classes. She did not have to apply for the .4 contract." (*SUMF*, ¶ 143) However, Goodman has admitted that she already had submitted her May 5, 2014 job application to be hired, by her application signed and dated May 5, 2014. (*SUMF*, ¶ 144)

Goodman alleged that: "In order to qualify for an Instructional 2 Spanish certification, a teacher must have three (3) full-time years of Satisfactory teaching in Pennsylvania and she has six (6) years to complete the process." (*SUMF*, ¶ 145) However, these are not the requirements for obtaining Level II Certification. (*SUMF*, ¶ 146)

In paragraph 56 of the Amended Complaint, Goodman alleged that: "At the end of the 2014-2015 school year, Principal Jeffrey Smith recommended that Plaintiff receive an overall Unsatisfactory rating and that she be terminated due to latenesses during the school year." (*SUMF*, ¶ 147) The actual fact is that Principal Smith recommended that Goodman receive an Unsatisfactory rating and that she be terminated from employment due to excessive lateness despite warnings, not following appropriate sign-in procedures and leaving students unattended. (*SUMF*, ¶ 148)

In paragraph 28 of the Amended Complaint, Goodman falsely alleged that: "Plaintiff filed a grievance in regards to the Unsatisfactory rating and suspension on or about September 10, 2015." (*SUMF*, ¶ 149) In actuality, she filed the grievance to contest two "Needs Improvement" ratings and her five-day suspension. (*SUMF*, ¶ 150) Goodman falsely alleged in the Amended Complaint that: "On or about August 22, 2017, Plaintiff won an arbitration award as a result of the grievance filed against the Defendant for the Unsatisfactory rating in 2015 and the rating and suspension were removed from her record." (*SUMF*, ¶ 151) This was not true because the arbitrator denied Goodman's grievance of her five-day suspension, writing, "The five-day suspension issued to the grievant was for just cause." (*SUMF*, ¶'s 152-153); Exhibit D-64, Arbitration Opinion and Award, page 18, *JA at 0086*)

In paragraph 64 of the Amended Complaint, Goodman falsely alleged that: "The governing collective bargaining agreement does not require nor allow union Members to arbitrate discrimination claims, thus allowing union members to file a private civil rights action." (*SUMF*, ¶ 154) She admitted under oath, however, that the collective bargaining unit agreement ("CBA") included an anti-discrimination clause, and that employees could file grievances alleging violations of any provision in the CBA. (*SUMF*, ¶ 155)

Goodman testified under oath that she was never made aware of a draft "Separation Agreement and Release." She testified that her union representative never told her about it, that she didn't know why it was prepared, or who authorized it or who prepared it. (*SUMF*, ¶ 156) However, among the records that she produced in discovery is a copy of an email chain forwarded to her by her PSEA Union representative on October 11, 2016, stating among other things that, "From the notes I have it appears the grievance was held in abeyance pending a separation agreement that did not come to fruition." (*SUMF*, ¶ 157)

In light of so many contradictions and falsehoods by Goodman, it is appropriate for this Court to weigh her lack of credibility and grant summary judgment on this basis. In *Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005), the Second Circuit held that "the District Court did not err in granting defendant's

28

motion for summary judgment on the basis that Jeffrey's testimony--which was largely unsubstantiated by any other direct evidence--was 'so replete with inconsistencies and improbabilities' that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in his complaint." *Id*. at 555. The Court cited *Aziz Zarif Shabazz v. Pico*., 994 F.Supp. 460, 468-471 (S.D.N.Y. 1998), where:

> "[T]hen-District Judge Sotomayor granted summary judgment, expressly relying on the absence of any corroborating evidence in the record and highlighting the many inconsistencies and contradictions within the plaintiff's deposition testimony and affidavits. As Judge Sotomayor stated in *Pico*, 'when the facts alleged are so contradictory that doubt is cast upon their plausibility, [the court may] pierce the veil of the complaint's factual allegations ... and dismiss the claim.' *Pico*, 994 F.Supp. at 470."

*Jeffreys* at 555. Other Circuit Courts and the Eastern District Court of Pennsylvania have followed *Jeffreys* and granted summary judgment on such grounds. *See*, *Nunez v. Heere*, 438 F.Supp. 321, 324 (E.D.Pa. 2020); *Pina v. Childrens Place*, 740 F.3d 785, 799, 802 (1st Cir. 2014); *Reich v. City of Elizabethtown, KY*, 945 F.3d 968, 980-981 (6th Cir. 2019); *Bush v. Compass Group USA, Inc*., 683 Fed.Appx. 440, 449 (6th Cir. 2017) (citing *Jeffreys* and First, Sixth and Ninth Circuit cases).

The factual record in the present case shows plainly that Goodman has made multiple contradictory and false allegations in support of her uncorroborated claims of discrimination and retaliation against the School District. Pursuant to the well-reasoned holdings in the foregoing decisions, "no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in [Goodman's Amended] complaint." *Jeffreys* at 555. Given that her factual allegations have proven contradictory and incredible, "[the court may] pierce the veil of the [Amended] complaint's factual allegations … and dismiss the claim." *Pico* at 470. The Court should grant summary judgment in favor of Defendant based on this factual record.

## CONCLUSION

Based upon the foregoing, Defendant, Norristown Area School District, respectfully requests that the Court grant its motion and enter summary judgment in its favor.

Respectfully submitted,

Date:  July 1, 2021

/s/ *Michael I. Levin*
Michael I. Levin (PA 21232)
James J. Musial (PA 71100)
LEVIN LEGAL GROUP, P.C.
*Attorney for Defendant,*
*Norristown School District*

30